Sheehan & Associates, P.C.
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck, NY 11021-3104
Tel: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                                    7:21-cv-00868

| | |
|---|---|
| Melissa Dolson, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Procter & Gamble Company, | |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      The Procter & Gamble Company ("defendant") manufactures, distributes, markets, labels and sells Vanilla Honey & Vitamin B Shampoo in its Bio Renew product line within the Herbal Essences brand ("Product").

2.      The relevant representations include "Bio:Renew," the seal of "Royal Botanic Gardens – Kew" and "Real Botanicals."



3.     A botanical garden "is a garden dedicated to the collection, cultivation, preservation and display of a wide range of plants labelled with their botanical names."[1]

4.     Regular consumers know that the "main function of a botanical garden is to allow an audience to see and learn about plants."[2]

---

[1] Wikipedia contributors, "Botanical garden," Wikipedia, The Free Encyclopedia.
[2] What Are the Benefits of Botanical Gardens?, FloraQueen.

5.      According to one scholar, "Modern gardens are also a key link between people and plants."

6.      Each year, over half a billion people visit one of the over 3,000 botanical gardens around the world.[3]

7.      The seal of Royal Botanical Gardens Kew appears to consumers as a certification or endorsement of the Product by this organization.

8.      By the nature of this type of organization – a garden which maintains collections of plants – consumers reasonably expect the endorsement is related to the plant-based content and component of the Product.

9.      The seal represents to consumers that this organization has thoroughly assessed the Product in areas where consumers properly credit its expertise – the use of plants and plant-based ingredients and stewardship for the environment. 16 C.F.R. § 255.4 ("Endorsements by organizations.").

10.     While the third-party seal is adjacent to the statement, "Real Botanicals," and purports to "qualify" the endorsement, reasonable consumers understand "botanical" is similar to "botany," a fancy name for the plant biology they learned in middle school. 16 C.F.R. § 260.6(e) (advising that attributes conveyed by a certification or seal be qualified to prevent consumers from being misled through "clear and prominent qualifying language that clearly conveys that the certification or seal refers only to specific and limited benefits.").

11.     Botanicals, by extension, are substances that originate from plants.

12.     The common understanding of botanicals gives reasonable consumers the impression the Product's ingredients will derive mainly or exclusively from plants, which have undergone

---

[3] Westwood, Murphy, et al. "Botanic garden solutions to the plant extinction crisis." Plants, People, Planet 3.1 (2021): 22-32.

minimal processing and modification prior to being included in the Product.

13.    Consumers do not expect the Product's ingredients will undergo chemical transformations which render them substantially distinct from their starting material, which was previously *part* of a plant.

14.    However, this organization has not endorsed the Product, even though its seal is second in prominence in size on the front label to the brand name.



15.     Defendant failed to disclose that it made numerous payments to the organization for the use of its prestigious seal.[4] 16 C.F.R. § 255.5 ("Disclosure of material connections.").

16.     In contrast to a traditional endorsement relationship, i.e., an athlete promoting a shampoo on a television commercial, where it is understood that the endorser is compensated, the endorsing organization is a quasi-government agency.

17.     Even if purchasers of the Product do not know the exact details about Royal Botanic Gardens Kew, the name and seal have the gravitas of legitimacy derived from almost universally held respect for historic English institutions.

18.     Additionally, the endorsement by this type of governmental unit is particularly novel, original and unexpected, which makes it unlikely consumers will expect the organization was compensated for the use of its seal.

19.     Consumers will expect that celebrities and even independent third-party groups are receiving remuneration for their approval of a product or service, but will not think governmental agencies operate under those same rules, and therefore, such an endorsement is based entirely on the merits.

20.     The Product's "Bio:Renew" brand name furthers the misleading impression received by consumers.

21.     "Bio" is the prefix meaning "life" and is understood to refer to *natural* materials, which originate as living things, like a plant, in contrast to synthetic materials, which are wholly created in a laboratory.

22.     Likewise, "Renew" is understood in connection with "Bio," because natural

---

[4] Authenticating botanical extracts for Herbal Essences bio:renew, May 23, 2019, Kew.org ("Commercially-funded projects like these allow Royal Botanic Gardens, Kew to continue its important scientific research and conservation work through partnerships in 110 countries worldwide.").

materials can be regenerated or regrown.

23.    In contrast, synthetic materials are not understood as capable of being "renewed" because of their artificial character.

24.    Consumers are misled because they receive the impression that the Product contains only plant ingredients which are not subject to chemical modification or processing, which materially alters their original composition.

25.    As such, reasonable consumers, including Plaintiff, believed the Product contains only natural ingredients.

26.    According to the Royal Botanic Gardens Kew, the use of their "stamp of approval"

show[s] that they have authenticated the key <u>plant-derived ingredient histidine</u> – a natural antioxidant – in the Herbal Essences bio:renew products.[5] (emphasis added).

27.    Far from endorsing the Product as made from plants or entirely plant-based, the only function of this world-renowned organization is "making sure that the [histidine] extract is of high enough quality to support the claims that the ingredient in Herbal Essences bio:renew makes an impact on your hair."

---

[5] *Id.*

**INGREDIENTS:** WATER, SODIUM LAUROYL METHYL ISETHIONATE, GLYCERIN, COCAMIDOPROPYL BETAINE, DISODIUM COCOAMPHODIACETATE, HONEY EXTRACT/EXTRAIT DE MIEL, HISTIDINE, ALOE BARBADENSIS LEAF JUICE, ECKLONIA RADIATA EXTRACT, FRAGRANCE, PANTHENOL, TRISODIUM ETHYLENEDIAMINE DISUCCINATE, SODIUM BENZOATE, PHENOXYETHANOL, POLYQUATERNIUM-10, ACRYLATES/C10-30 ALKYL ACRYLATE CROSSPOLYMER, SALICYLIC ACID, POLYQUATERNIUM-7, GLYCOLIC ACID, NIACINAMIDE.

28.     However, the main ingredients in the process are synthetic substances, which are not understood by consumers as "botanicals" or plant ingredients.

29.     For instance, the most predominant ingredient after water is sodium lauroyl methyl isethionate, a synthetic surfactant.

30.     Glycerin is a synthetic ingredient, produced by the hydrogenolysis of carbohydrates.

31.     Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

32.     Cocamidopropyl betaine is a synthetic surfactant used for its cleaning properties and to increase foaming.

33.      Disodium cocoamphodiacetate is a synthetic amphoteric surfactant.

34.     Trisodium ethylenediamine disuccinate is a synthetically produced chelating agent, used to remove heavy metals from hair.

35.     Sodium benzoate is a synthetic chemical preservative, produced when benzoic acid, found naturally in fruits like cranberries, is combined with sodium hydroxide.

36.     To create these ingredients, the starting material is typically plant-sourced, like coconut or palm oil.

37.     But these ingredients are then subjected to substantial chemical modification and processing such that the resulting ingredients are entirely new, synthetically created ingredients that are vastly and fundamentally different than the original plant-sourced ingredient.

38.     In light of the seal and purported endorsement, reasonable consumers are led to believe the Product only contains ingredients that come from plants and are not subject to chemical modification or processing, which materially alters the ingredients' original plant-based composition.

39.     As such, reasonable consumers, including Plaintiff, believed the Product only contained natural ingredients.

40.     The representations are misleading and deceptive, and therefore unlawful.

41.     Defendant's marketing is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

42.     Defendant misrepresented the Product through affirmative statements and omissions.

43.     Defendant sold more of the Product and at higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

44.     The value of the Product that plaintiff purchased, used and/or consumed was materially less than its value as represented by defendant.

45.     Had plaintiffs and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

46.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than no less than $5.99 for bottles of 12.2 OZ, excluding tax, higher than they would be sold at absent the representations cited herein, compared to other similar products represented in a non-misleading way.

Delayed Discovery

47.    Plaintiff and the Class are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Products.

48.    Nevertheless, they would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law.

49.    Furthermore, Defendant's labeling practices and nondisclosures impeded Plaintiff and the Class Members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period.

Jurisdiction and Venue

50.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

51.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

52.    Plaintiff Melissa Dolson is a citizen of New York.

53.    Defendant The Procter & Gamble Company is a corporation organized under the laws of Ohio, headquartered in Ohio and is a citizen of Ohio.

54.    Diversity exists because Plaintiff Melissa Dolson and defendant are citizens of different states.

55.    Upon information and belief, sales of the Product and statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and

costs.

56.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, *viz*, the purchase of the Product and the misleading representations relied upon by plaintiff.

57.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

58.     Plaintiff is a citizen of Newburgh, Orange County, New York.

59.     Defendant is an Ohio corporation and one of the largest consumer goods companies in the world.

60.     Defendant manufactures, labels and distributes personal hygiene products including hair care products under numerous brands, sold at every supermarket, drugstore, convenience store and online.

61.     During the relevant statutes of limitations, plaintiff purchased the Product within this district and/or State for personal consumption and/or use in reliance on the representations.

62.     Defendant intended for Plaintiff and the Class to be deceived, and Plaintiff and the Class actually were deceived by the unlawful, misleading labeling.

63.     Plaintiff and the Class lost money as a result of Defendant's conduct  because they would not have purchased the Product or would not have paid as much  as they did in the absence of Defendant's misrepresentations and omissions.

64.     Plaintiff Melissa Dolson purchased the Product on one or more occasions, at stores including Walmart, 1201 NY-300, Newburgh, NY 12550, including between approximately October 27, 2020 and November 27, 2020, for no less than the price identified above per OZ.

65.     Plaintiff was deceived by, and justifiably relied upon, the Product's deceptive

labeling.

66.    Plaintiff and the Class members would not have purchased the Product in the absence of Defendant's misrepresentations and omissions or would only have been willing to pay less for the Products than they did.

67.    The Product was worth less than what Plaintiff and Class members paid, and they would not have paid as much as they did for the Product absent Defendant's false and misleading statements and omissions.

68.    Plaintiff and Class members therefore lost money as a result of Defendant's unlawful conduct.

69.    Plaintiff and the Class altered their position to their detriment and suffered a loss in an amount equal to the amounts they paid for the Product.

70.    Plaintiff intends to, seeks, to, and will purchase the Product again when she can do so with the assurance that the Product's labels are truthful and not misleading.

<u>Class Allegations</u>

71.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

72.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

73.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

74.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

75.    Plaintiff is an adequate representative because her interests do not conflict with other

members.

76.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

77.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

79.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
Consumer Protection Statute

80.    Plaintiff incorporates by reference all preceding paragraphs.

81.    Plaintiff and class members desired to purchase and use a product which had the qualities and attributes they reasonably expected based on the endorsement and accompanying representations.

82.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

83.    Defendant misrepresented the misrepresented the relationship between the Product and the endorsing organization, and in so doing, misrepresented the substantive, quality, compositional, organoleptic and/or plant-based attributes of the Product.

84.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

85.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

86.    Plaintiff incorporates by reference all preceding paragraphs.

87.    Defendant misrepresented the relationship between the Product and the endorsing organization, and in so doing, misrepresented the substantive, quality, compositional, organoleptic and/or plant-based attributes of the Product.

88.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

89.    This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

90.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

91.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

92.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

93.   Plaintiff incorporates by reference all preceding paragraphs.

94.   The amount and proportion of the characterizing components – plant ingredients – and the purported endorsement from a leading plant institution – have a material bearing on price and consumer acceptance of the Product.

95.   Defendant's fraudulent intent is evinced by its failure to disclose the nature of the relationship with the endorsing organization and contributed to and/or failed to correct the misimpressions received by consumers.

96.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

97.   Plaintiff incorporates by reference all preceding paragraphs.

98.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 1, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:21-cv-00868
United States District Court
Southern District of New York

Melissa Dolson, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

The Procter & Gamble Company,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
  60 Cutter Mill Rd Ste 409
  Great Neck NY 11021-3104
     Tel: (516) 268-7080
     Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 1, 2021

/s/ Spencer Sheehan
Spencer Sheehan